ON MOTION FOR REHEARING

THOMAS, J.
This cause is before us on Petitioners’ motion for rehearing, rehearing en banc; or alternatively, certification of question of great public importance. We deny the motion, but write to clarify our original opinion. Accordingly, we withdraw our former opinion of June 18, 2012, and substitute this opinion in its place.
Petitioner, the Department of Revenue (DOR), seeks a writ of certiorari to quash a non-final order dismissing DOR’s petition for modification of child support, filed on behalf of co-Petitioner, Steven McLeod, Respondent’s former husband and the non-custodial parent.[1] DOR challenges the trial court’s ruling that DOR could not represent the non-custodial obli-gor parent, because the child was not receiving public assistance, and DOR sought to lower the obligor’s payments. Although we agree that the trial court’s basis for dismissing the petition was erroneous, we also find that the court reached the right result. We hold that DOR does not have standing to seek a modification of child support on behalf of a non-custodial parent obligated to pay support, unless either party or the child is receiving public assistance, or when the obligor has failed to make support payments and DOR is called upon by the custodial parent to assist in enforcing a child support order. Thus, because the challenged ruling was not incorrect, DOR has failed to establish that the trial court departed from the essential *445 requirements of law; therefore, we deny the petition.

Procedural Background

Co-Petitioner Steven McLeod and Respondent were divorced in 2006. Under the final dissolution judgment, Mr. McLeod was the non-custodial parent and was required to pay child support “through the Florida Disbursement Unit.” In 2007, Mr. McLeod filed a petition for modification of his child support obligation, which was followed by Respondent’s counter-petition. That year, the trial court entered two contempt orders against Mr. McLeod for child support arrearages. In September 2008, Mr. McLeod voluntarily dismissed his petition. Mr. McLeod apparently proceeded pro se in these post-dissolution proceedings, whereas Respondent was represented by counsel.
In November 2009, DOR, “on behalf of’ Mr. McLeod, filed a “Supplemental Petition for Modification of Support,” stating, inter alia, that Mr. McLeod and the child “are eligible for child support services of [DOR] pursuant to chapter 409, Florida Statutes.” The petition also stated: “DOR’s participation and the undersigned attorney’s representation are limited in scope as set forth in Section 409.2564(5), Florida Statutes.” The trial court conducted a hearing and entered a written order dismissing DOR’s supplemental petition.
In its order, the trial court relied on Department of Health and Rehabilitative Services v. Heffler, 382 So.2d 301 (Fla.1980), and explained that “the Florida Supreme Court addressed the constitutionality of a statute allowing the Department of Health and Rehabilitative Services to bring a paternity action. In holding the statute constitutional, the Supreme Court addressed the fact that children should be maintained from resources of the parents, not the citizens of the State of Florida.” The trial court then found:
Here, DOR is representing a non-custodial parent whose child does not receive public assistance in a proceeding to lower child support. Obviously, if child support was lowered, the child would be harmed. This is contrary to the rationale of Hejfler whereby responsible parents should maintain their children. The funds and resources of this State should not be utilized by bringing court actions on behalf of a non-custodial parent, whose child is not receiving public assistance, when such action would be to the detriment of the child. Accordingly, the Court finds that the statutes, as applied in this case, [do] not allow representation of Former Husband by DOR.
(Emphasis in original.)

Analysis

“It is an established principle of law in this jurisdiction that common law certiorari is not a permissible vehicle for seeking review of an interlocutory order rendered in a law action unless it is clearly established that (1) the ruling, if erroneous, constitutes a departure from the essential requirements of law; and (2) it will cause material injury to the petitioner throughout the remainder of the proceedings; and (3) the injury is one for which there will be no adequate remedy by appeal after final judgment.” Dairyland Ins. Co. v. McKenzie, 251 So.2d 887, 888 (Fla. 1st DCA 1971). Here, DOR fails to satisfy the first prong of this tripartite test.
DOR contends that the trial court’s ruling that DOR lacks standing to seek a downward modification of child support, when neither the parent nor the child have received public assistance, is contrary to *446 DOR’s federal and state mandates and established precedent. We disagree.
The statutory requirement that DOR review child support orders on a periodic basis, and if necessary, seek a modification, exists only with respect to “child support orders in Federal Title IV-D cases at least once every 3 years when requested by either party, or when support rights are assigned to the state under s. 414.095(7)....”[2] § 409.2564(11). As discussed below, however, based on the relevant statutes, there is no Title IV-D case with respect to child support obligations unless either or both parents, or the dependent child, are receiving public assistance, or if the custodial parent has requested DOR’s assistance in enforcing or modifying a child support order. Based on the record, there is no evidence that either situation exists here.
As DOR itself notes in its petition to this court: “To be eligible for a federal Temporary Assistance for Needy Families (TANF) welfare block grant under Title IV-A of the Social Security Act, states must operate a child support enforcement program in accordance with an approved state plan under Title IV-D of the Act.” (Emphasis added.) DOR also states that “the Title IV-D program required the states to provide custodial parents with legal assistance in collecting child support from noncustodial parents.” See also 42 U.S.C. § 602(a)(2) (providing that for a state to be eligible for the program’s block grants, it must submit, inter alia, “[a] certification by the chief executive officer of the State that, during the fiscal year, the State will operate a child support enforcement program under the State plan approved under part D of this subchap-ter.”) (emphasis added).
To this end, 42 U.S.C. section 651 provides:
For the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, ... obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children (whether or not eligible for assistance under a state program funded under part A of this subchapter) for whom such assistance is requested, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.
(Emphasis added.)
Pursuant to 42 U.S.C. section 654(3), participating states must “provide for the establishment or designation of a single and separate organizational unit ... within the State to administer the plan” for enforcing child support orders and obtaining support. In Florida, DOR is the agency charged with performing these statutorily-required tasks. See § 409.2557(1), Fla. Stat.
Subsection 654(4) provides that a participating State must also agree that it will:
(A) provide services relating to the ... modification, or enforcement of child support obligations, as appropriate, under the plan with respect to—
(i) each child for whom (I) assistance is provided under the State program funded under part A of this subchap-ter, (II) benefits or services for foster care maintenance are provided under the State program funded under part E of this subchapter, (III) medical *447 assistance is provided under the State plan approved under subchapter XIX of this chapter, or (IV) cooperation is required pursuant to section 2015(1 )(1) of Title 7, unless, in accordance with paragraph (29), good cause or other exceptions exist;
(ii) any other child, if an individual applies for such services with respect to the child; and
(B) enforce any support obligation established with respect to—
(i) a child with respect to whom the State provides services under the plan; or
(ii) the custodial parent of such a child;....
42 U.S.C. § 654(4) (emphasis added).
DOR contends that the italicized language gives it standing in this case.[3] However, this provision must be read in conjunction with 42 U.S.C. section 666, entitled “Requirement of statutorily prescribed procedures to improve effectiveness of child support enforcement.” (Emphasis added.) Subsection (10)(A) of this statute provides that a state’s plan must include:
(i) ... Procedures under which every 3 years (or such shorter cycle as the State may determine), upon the request of either parent or if there is an assignment under part A of this sub-chapter, the State shall with respect to a support order being enforced under this part, taking into account the best interests of the child involved—
(I) review and, if appropriate, adjust the order in accordance with the guidelines established pursuant to section 667(a) of this title if the amount of the child support award under the order differs from the amount that would be awarded in accordance with the guidelines;![4]]
[[Image here]]
Procedures which provide that any adjustment under clause (i) shall be made without a requirement for proof or showing of a change in circumstances.
(B) Proof of substantial change in circumstances necessary in request for review outside 3-year cycle
Procedures under which, in the case of a request for a review, and if appropriate, an adjustment outside the 3-year cycle (or such shorter cycle as the State may determine) under clause (i), the State shall review and, if the requesting party demonstrates a substantial change in circumstances, adjust the order in accordance with the guidelines established pursuant to section 667(a) of this title.
42 U.S.C. § 666(10)(A) (emphasis added).
Based on the foregoing, a non-custodial parent may seek DOR’s assistance to modify a child support order, but only “with respect to a support order being enforced ” *448 under Title IV-D. This interpretation is further supported by several Florida Statutes enacted to implement the federal requirements and our decision in Florida Department of Revenue, Child Support Enforcement v. Baker, 24 So.3d 1254, 1257 (Fla. 1st DCA 2009) (holding trial court erred by prohibiting DOR from intercepting tax refund, noting this court’s agreement that state courts may not interfere with a “comprehensive child support enforcement scheme.”) (emphasis added).
As noted, section 409.2557(1), Florida Statutes, designates DOR “as the state agency responsible for the administration of the child support enforcement program, Title IV-D of the Social Security Act.” (Emphasis added.) Subsection (2) of this statute provides: “The departments authority shall include, but not be limited to, the establishment of ... support obligations, as well as the modification, enforcement, and collection of support obligations.” Section 409.2558(1) provides: “The department shall distribute and disburse support payments collected in Title IV-D eases in accordance with 42 U.S.C. s. 657 and regulations adopted thereunder....”
Section 409.2564, Florida Statutes, addresses “Actions for support.” Subsection 409.2564(1) provides: “In each case in which regular support payments are not being made as provided herein, the department shall institute, within 30 days after determination of the obligor’s reasonable ability to pay, action as is necessary to secure the obligor’s payment of current support and any arrearage which may have accrued under an existing order of support.” Subsection (2) provides: “The order for support entered pursuant to an action instituted by the department under the provisions of subsection (1) shall require that the support payments be made periodically to the department through the depository.” It is in this context that this statute also addresses DOR’s obligation to periodically review support orders to determine if modification is warranted, either on its own or at a party’s request. See § 409.2564(11), (12), Fla. Stat.
Based on the foregoing, DOR’s authority to seek modification to a child support order exists only when either party or the child is receiving public assistance, or when the obligor has failed to make support payments and DOR is called upon by the custodial parent to assist in enforcing a child support order. Here, although Mr. McLeod was required to make his child support payments through DOR’s disbursement unit under the divorce decree, and the trial court entered two contempt orders related to child support, Respondent never enlisted DOR’s assistance in her child support enforcement action, and DOR never instituted such an action. Instead, Respondent retained her own attorney. Although both parties sought modification of the child support order, by the time DOR appeared in November 2009, no enforcement action was pending then or when DOR filed an amended petition in 2010.
Before DOR first appeared in the case, this was a private post-dissolution dispute between former spouses concerning whether either party was entitled to modification of a child support order. Although our decision in Florida Department of Revenue v. Collingwood, 43 So.3d 952 (Fla. 1st DCA 2010), supports DOR’s position that it has standing to seek a downward modification of a child support order, even if neither party nor the child has received public assistance, our decision there does not support DOR’s reasoning here that a child support obligor can convert a private legal dispute into a Title IV-D matter by enlisting DOR’s assistance. This is especially true where none of the parties con *449 cerned is receiving or had been receiving public assistance; the payor is current on his obligations or no enforcement action is pending; or, as here, the custodial parent has never sought DOR’s assistance in enforcing a child support order.
DOR also contends that it had standing because it was providing the periodic review of support orders described above to Mr. McLeod “through the child support modification proceeding below.” This is a variation of the argument that DOR has standing simply by virtue of filing a petition. Either way, neither the case law nor any of the statutes relied upon by DOR support this expansive interpretation of DOR’s standing. Nor was standing conferred simply because the divorce decree ordered the non-custodial parent to make his child support payments through the State’s disbursement unit.
In its rehearing motion, DOR contends that, based on our original opinion, it would not have standing in the following situations:
1. Providing child support establishment services to the custodial parent in those circumstances in which neither the custodial parent nor child are receiving public assistance;
2. Providing paternity establishment services to the custodial parent in those circumstances in which neither the custodial parent nor child are receiving public assistance;
3. Providing child support modification services to the custodial parent in those circumstances in which neither the custodial parent nor child are receiving public assistance; such as in a post-dissolution of marriage action in which the custodial parent seeks an upward modification of the child support obligation that was established in what this Court refers to as ‘private legal dispute.’
This is an overbroad interpretation of the narrow holding of our opinion. First, neither of these scenarios was involved here. Rather, this ease involves a noncustodial parent seeking a downward modification of his child support obligation where neither of the parents, nor the dependent child, was receiving public support and the custodial parent was not requesting any assistance from DOR with respect to the non-custodial parent’s child support obligation. Second, to the extent it was possible to misconstrue our holding to foreclose DOR’s standing to assist a custodial parent seeking DOR’s assistance in seeking an upward modification of the noncustodial parent’s support obligation, that is not what we held, nor is it what we hold now. As for the other two scenarios envisioned by DOR in its motion, we express no opinion on DOR’s standing in those situations.
Consequently, the trial court’s dismissal of the modification action brought by DOR based on DOR’s lack of standing was not a departure from the essential requirements of law, even if the court’s reasoning was flawed. See D.R. Horton, Inc.-Jacksonville v. Peyton, 959 So.2d 390, 397-98 (Fla. 1st DCA 2007) (holding under “tipsy coachman” rule, when trial court reaches right result, but for wrong reasons, that decision will be upheld on appeal if there is any basis which would support judgment in record). This, in turn, obviates the necessity of addressing DOR’s contention that the court’s order also will result in irreparable harm that cannot be rectified on direct appeal.
Petition for Writ of Certiorari is DENIED.
BENTON, C.J., and SWANSON, J., concur.

. We have jurisdiction pursuant to Article V, section 4(b)(3) of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(b)(2)(A). The order under review is non-final, because the trial court has not yet disposed of Respondent’s petition seeking modification of child support.

. Section 409.2563(l)(f), Florida Statutes, defines a "Title IV-D case" as "a case or proceeding in which the department is providing child support services within the scope of Title IV-D of the Social Security Act.”

. DOR also points to 42 U.S.C. section 654(25) in support of its position. This subsection requires that a state's plan
provide that if a family with respect to which services are provided under the plan ceases to receive assistance under the State program funded under part A of this sub-chapter, the State shall provide appropriate notice to the family and continue to provide such services, subject to the same conditions and on the same basis as in the case of other individuals to whom services are furnished under the plan, except that an application or other request to continue services shall not be required of such a family and paragraph (6)(B) shall not apply to the family;....
According to our review of the record, however, this subsection is not implicated in this case, because there is no evidence anyone involved here received public assistance.

. 42 U.S.C. section 677(a) addresses state support guidelines.